United States Bankruptcy Court

Eastern District of Michigan – Northern Division

| | | | |
|---|---|---|---|
| In re | MAGDALENA PEREZ,<br>Debtor | ) ) | Case No. 24-21078-dob |
| | WILDFIRE CREDIT UNION,<br>Plaintiff | ) | Adversary Proceeding: |
| | v | ) | 25-02007-DOB |
| | MAGDALENA PEREZ.<br>    Defendant/Third-Party Plaintiff | ) ) | Chapter<br>7 |
| | V | ) | |
| | DAVID STOCKMAN AND | ) | |
| | JENNIFER STOCKMAN, | ) | |
| | Third-Party Defendants | ) | |
| | Jointly and severally | ) | |

_____ )

MATTHEW L. FREY (P68239)
Attorney for Debtor/Defendant
4901 Towne Centre Road, Suite 235
Saginaw, MI 48604
989-799-2227
mfrey@matthewfreylaw.com

WENZLOFF & FIREMAN, P.C.
Karl L. Wenzloff (P71949)
Attorney for Creditor/Plaintiff
903 N Jackson St
Bay City, MI 48708
989-893-9511
wenzloffbankruptcy@sbcglobal.net

David Stockman Pro Se

Jennifer Stockman Pro Se

_____ )

**THIRD-PARTY PLAINTIFF MAGDALENA PEREZ'S OBJECTION TO DEFENDANT JENNIFER STOCKMAN'S CORRECTED MOTION FOR SUMMARY DISPOSITION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7056**

NOW COMES, Magdalena Perez, by and through her attorney, Matthew L. Frey Attorney at Law, by Matthew L. Frey, and for her brief in support of her objection to Defendant Jennifer Stockman's Motion for Summary Disposition pursuant to Federal Rule of Bankruptcy Procedure 7056 states as follows:

Third-party Plaintiff Magdalena Perez incorporates her brief in support of this objection and for the reasons set forth therein,  requests this Court deny the requested relief in the motion.

WHEREFORE, Defendant/Third-Party Plaintiff, Magdalena Perez respectfully prays that this Honorable Court deny Jennifer Stockman's Corrected Motion for Summary Disposition or in the alternative holds it in abeyance until discovery has been completed.

Respectfully submitted,

By: /s/ Matthew L. Frey
MATTHEW L. FREY (P68239)
4901 Towne Centre Road, Suite 235
Saginaw, MI 48604
(989) 799-2227
mfrey@matthewfreylaw.com

Dated: April 23, 2026

United States Bankruptcy Court

Eastern District of Michigan – Northern Division

| | | | |
|---|---|---|---|
| In re | MAGDALENA PEREZ,<br>Debtor | ) ) | Case No. 24-21078-dob |
| | WILDFIRE CREDIT UNION,<br>Plaintiff | ) | Adversary Proceeding: |
| | v | ) | 25-02007-DOB |
| | MAGDALENA PEREZ.<br>      Defendant/Third-Party Plaintiff | ) ) | Chapter<br><u>7</u> |
| | V | ) | |
| | DAVID STOCKMAN AND | ) | |
| | JENNIFER STOCKMAN, | ) | |
| | Third-Party Defendants | ) | |
| | Jointly and severally | ) | |

_____ )

MATTHEW L. FREY (P68239)
Attorney for Debtor/Defendant
4901 Towne Centre Road, Suite 235
Saginaw, MI 48604
989-799-2227
mfrey@matthewfreylaw.com

WENZLOFF & FIREMAN, P.C.
Karl L. Wenzloff (P71949)
Attorney for Creditor/Plaintiff
903 N Jackson St
Bay City, MI 48708
989-893-9511
wenzloffbankruptcy@sbcglobal.net

David Stockman Pro Se

Jennifer Stockman Pro Se

_____ )

## BRIEF IN SUPPORT OF THIRD-PARTY PLAINTIFF'S OBJECTION TO DEFENDANT JENNIFER STOCKMAN'S CORRECTED MOTION FOR SUMMARY DISPOSITION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7056

NOW COMES, Magdalena Perez, by and through her attorney, Matthew L. Frey Attorney at Law, by Matthew L. Frey, and for her brief in support of her objection to Defendant Jennifer Stockman's Motion for Summary Disposition pursuant to Federal Rule of Bankruptcy Procedure 7056 states as follows:

### I. Introduction

Third-Party Plaintiff Magdalena Perez (hereinafter "Perez") initiated a third-party complaint against David Stockman and Jennifer Stockman under three theories: contribution, indemnity, and unjust enrichment. The action was filed in response to a adversary proceeding, 25-02007-dob, filed by Wildfire Credit Union (hereinafter "WFCU") against Perez over what is tantamount to an action for non-sufficient funds. That is to say, a series of two checks and one moneygram were deposited into an account at WFCU, which was opened jointly by David Stockman and Perez, which then later did not clear and were rejected. WFCU in the interim had forwarded all, or nearly, all of these funds to ADP, a payroll company, which then issued bi-weekly payroll checks to the employees of Great Lakes Bay Staffing Company (hereinafter "GLBSC") and/or Michigan Health Clinics (hereinafter "MHC"). At some point thereafter, WFCU closed the account and assumptively the funds were never made good by any of the involved parties.

### II. Statement of Facts

On or around 2017 Perez became an employee of David Stockman and/or his related companies. Over time she worked her way up from initially a medical assistant to working in human resources and payroll. Pursuant to public records, she may have even held roles on the boards of some of the companies controlled by David Stockman, but was never a shareholder. When filling out the account application at WFCU she signed as co-CEO of GLBSC. A company formed to run the payroll function for David Stockman's

various employees. This is a common strategy oft-deployed by individual managing multiple entities, as it allows for benefit plans and payroll to be performed as a consolidated function. It also allows a company to separate employees, such as corporate or executive versus lower-tier employees, or allow for tax advantages. Theoretically, the company would also provide the ability to contract the employees out as a staffing company beyond David Stockman's companies, but it failed before ever doing so. All employees of GLBSC were transferred immediately back to Michigan Health Clinics, P.C. – solely owned by David Stockman.

Outside of the above, many of the facts in this case are not disputed, but a number are.

First, Perez disputes that she should be liable to WFCU for the funds. She alleges that she was a mere employee of GLBSC despite her title and/or MHC. A fact supported by filings from David Stockman under oath and penalty of perjury, now stricken however, that appeared at docket entry #36 and 75 stated as follows (See attached Exhibit 1):

"I. Identity and Background

1. I am a physician and business owner affiliated with Michigan Health Clinics, P.C. and Great Lakes Bay Staffing, Inc.

2. I have direct knowledge of the corporate banking practices, payroll operations, and employee roles relevant to this adversary proceeding.

IV. Perez's Limited Role and the Media Strategy

1. Ms. Perez was an HR and payroll administrator. She had no signing authority or financial control.

2. She followed my directions and did not originate or approve transactions…"

Second, Perez alleges that her employer(s) have or had a duty to indemnify her to this action for NSF, which arguably includes Jennifer Stockman per Perez as Perez, with all other employees went back to Michigan Health Clinics, P.C. upon the demise of GLBSC.

Third, she alleges that Jennifer Stockman had control over her and acted in supervisory or similar role and that she believed Jennifer Stockman, either directly, or

through her spouse, David Stockman, could terminate her at any time. This is at least partially supported by Jennifer Stockman's affidavit admitting she has at least held supervisory position(s) over Perez until at least 2022 at Michigan Health Clinics, P.C. Perez claims this never ended despite the self-serving affidavit of Jennifer Stockman. It is also arguably supported that Perez's final paystub reflects Jennifer Stockman's personal address, despite her affidavit that she wanted nothing to do with operations or payroll and the fact that the company has multiple other addresses. Jennifer Stockman also solely owns this property and has since November of 2022. See Exhibits 2 and 3.

Fourth, Perez sent a number of discovery requests to David Stockman and Jennifer Stockman on or about March 3, 2026. Jennifer Stockman provided essentially no answers or merely denied everything requested, which is now the basis of this motion. See Exhibit 4. David Stockman has not responded to the requests sent to him which included a number of requests to admit.

Fifth, Perez alleges that Jennifer Stockman will have been unjustly enriched if she is not held accountable to Perez in that if WFCU collects from Perez – who left the company(ies) in March of 2024. In furtherance of this allegation, Jennifer Stockman, despite the alleged financial troubles of her spouse and what she claims are his companies, has continued to reside in her near-million dollar home in Saginaw Township. She maintains sole ownership of that home. Upon information and belief she has no income but for what she derives from her spouse and/or his companies. She has put forth no evidence that despite WFCU essentially paying David Stockman's payroll, her life in any way has or was measurably changed.

Sixth, Perez alleges that she was not negligent when depositing the checks on behalf of her employer, David Stockman. See Exhibit 5. David Stockman enjoys a natural position of inherent trust in being a licensed doctor. While he had in the past had checks "bounce," he had always made good on them within a short time. Perez never had information about what was in his accounts the drafts were drawn upon. Effectively, she alleges she was a de facto courier and could justifiably rely upon her employer's representations.

Seventh, Perez alleges that by virtue of her relationship with Dr. David Stockman, her capacity as a supervisor, acceptance of at least one large asset into her name despite possible financial troubles, that Jennifer Stockman and David Stockman are effectively in a civil conspiracy wherein Jennifer Stockman benefits from passing her spouse's payroll obligation onto Perez, of which she, through her bi-weekly pay was certainly a direct beneficiary of.

Eighth, Perez alleges a special relationship between herself and effectively the Stockmans. Perez alleges they effectively both her employer and controlled her during her employment. That by their relationship as employer-employee, and that she acted within the scope of her employment, they should be held responsible in some form as alleged to her for any damages and any attorney fees and costs she has or will have to pay on behalf of defending this action.

## III. Applicable Law

First this author readily acknowledges that other jurists can state and summarize the law much better than he can, with that in mind:

### (A) Applicable Federal Rules of Civil Procedure

Under Federal Rule of Civil Procedure 14, a third-party complaint may only be brought by a defendant against a third-party defendant where the third-party defendant may be liable to the defendant/third-party plaintiff. This includes instances where the third-party defendant may owe the defendant indemnification or contribution. Where no such liability exists, the claim must be dismissed.

Federal Rule of Civil Procedure 56 for summary judgment is incorporated into Federal Rule of Bankruptcy Procedure 7056. Under Rule 56(a), a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Rule further states the following:

(c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

> (4) issue any other appropriate order.

The case law regarding a motion under FRBP 7056 can be summed as follows: (quoting from Kowall v. GMAC Mortgage LLC v. Kowall (In re Kowall), Adv. Pro. No. 10-03221-dof, Case No: 04-33668-dof (Bankr. E.D. Mich. Mar 31, 2011))

"As construed by decisions of the United States Supreme Court, "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell International Corp.,* 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 32223 (1986)). Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d (1986)."

**(B) Claims for Contribution**

Mich. Comp. Laws § 600.2925a governs contribution claims. Stating as follows:

> (1) Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

> (2) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share. A tort-feasor against whom contribution is sought shall not be compelled to make contribution beyond his own pro rata share of the entire liability.

**(C) Claims for Indemnity**

Common-law indemnity is based on the equitable principle that when the wrongful act of one person results in the liability of another, the latter should receive restitution from the former. *Skinner v D-M-E-Corp*, 124 Mich App 580, 335 NW2d 90 (1983)

Implied contractual indemnity deals with situations in which traditional theories of vicarious liability do not apply, but due to the facts of the case, equity requires indemnification. Implied contractual indemnity arises only in cases in which there is a special relationship between the parties or a course of conduct by which one party undertakes to perform a certain service for another and impliedly assures indemnification if they fail to perform the service and that failure results in the other being liable for damages to a third party. *Dale v Whiteman*, 388 Mich 698, 202 NW2d 797 (1972)

### (D) Unjust Enrichment Claim

As to unjust enrichment – quoting from *Wright v. Genesee Cnty.*, 504 Mich. 410, 934 N.W.2d 805 (Mich. 2019):

"Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another. Restatement Restitution, 1st, § 1, comment *a*, p. 12. It is grounded in the idea that a party "shall not be allowed to profit or enrich himself inequitably at another's expense." *McCreary v. Shields* , 333 Mich. 290, 294, 52 N.W.2d 853 (1952) (quotation marks and citation omitted). <u>A claim of unjust enrichment can arise when a party "has and retains money or benefits which in justice and equity belong to another."</u> *Id.* (quotation marks and citation omitted)."

## IV. Analysis

In order to deny a motion for summary judgment, the Court must find there remains issues of genuine material fact. Here many facts remain that are genuine. With regards to indemnity and contribution, Perez alleges Jennifer Stockman's role in relation to her did not change. She alleges Jennifer Stockman retained her supervisory position until Perez left David Stockman's employ. Facts which Jennifer Stockman, without anything more than an affidavit, denies. Perez's affidavit should be given equal weight which outlines why Jennifer Stockman is responsible under these theories. The Court may also consider other items in the record, and although now stricken, we ask the Court to consider David Stockman's own words, filed under penalty of perjury that Perez was a HR and payroll administrator.

Perez further asserts that she merely followed Jennifer Stockman's spouse's directions. Nothing in record currently states Perez was responsible for incoming funds, only outgoing funds. Perez's affidavit makes clear David Stockman supplied the funds, that he had a history of making good on NSF charges, and that she felt she could rely upon that.

The genuine issue for trial is whether Jennifer Stockman was an employer. Perez says yes, Jennifer Stockman says no. Perez asserts she had no negligence when she followed the directions of Jennifer Stockman's spouse.

Perez also requested a number of items in her discovery requests: tax returns from 2023 and 2024 to show possible K1 distributions or other dividends from shareholder interests in David Stockman's businesses; employment records such as paystubs, a CV, company structure chart to show Jennifer Stockman's job title during which times; large transfers between the Stockmans to determine if additional assets were being transferred to shield assets from David Stockman's potential creditors. All of these requests were denied. From prior records we know David Stockman transferred 5775 McCarty to Jennifer Stockman solely, it is not a leap that she has received other potential assets or equitable interests from him when one factors in that he was not drawing a paycheck from his business.

As to the count of unjust enrichment. With Jennifer's refusal to provide requested discovery items, it is difficult at best at this time for Perez to show Jennifer has been unjustly enriched. Yet, despite this, Jennifer Stockman has not come forth showing that she has not been. Effectively, the sum of approximately one hundred and thirty thousand dollars was paid out from WFCU to the payroll company, those employees of her spouse, which included her who drew a check from GLBSC, got paid. Her spouse, and effectively her, were able to maintain their standard of living. There's no allegation or fact from Jennifer Stockman, that she did not get paid, or that they made sacrifices to attempt to pay back WFCU for the payroll. David Stockman does not draw a paycheck, or at least did not during Perez's time running payroll. The Stockmans set Jennifer's pay and duties. They now stand to benefit if the burden of David Stockman's payroll falls in any part on Perez.

If we take David Stockman's assertions at face value that he and Perez had no intent to defraud WFCU, then that creates an assumption that the sum in question either existed somewhere else besides the bounced checks and the account they were drawn upon, or that the sum would be available shortly. So where is the money? David Stockman, nor Jennifer Stockman, have ever argued it never existed, that they did not have it. So if it did not go from at least one Stockman to WFCU, then arguably it sat still under the purview and control of either David Stockman and/or Jennifer Stockman who chose to either use it for something else, or who still retain control over it, and thus they have been or shortly will be unjustly enriched as they seek to pass the liability onto Perez. What should have been a routine matter, a bank deposit to clear up an overdraft has cost Perez countless hours, stress, fees, and costs.

Jennifer Stockman, has unsurprisingly stated she is innocent, and that all of these allegations are false. She points to her lack of cooperation with discovery requests and her self-serving affidavit as evidence of such. This case was set for mediation, until it was cancelled due to some alleged newly discovered evidence by her spouse. Her spouse also wanted to previously delay mediation until depositions were taken, furthering his strategy of delay, of which this motion, likely drafted by him as it matches all the other pleadings, is yet one more attempt to do the same.

## V. Conclusion

Although Jennifer Stockman presents a case for dismissal, it is not compelling. Genuine issues of fact, stated since the time of the complaint, remain. These issues may still end up favoring her after her deposition is taken and she complies with discovery requests, but she has done little to show she is a non-responsible party here.

WHEREFORE, Defendant/Third-Party Plaintiff, Magdalena Perez respectfully prays that this Honorable Court deny Jennifer Stockman's Corrected Motion for Summary Disposition or in the alternative holds it in abeyance until discovery has been completed.

Respectfully submitted,

By: /s/ Matthew L. Frey

MATTHEW L. FREY (P68239)
4901 Towne Centre Road, Suite 235
Saginaw, MI 48604
(989) 799-2227
mfrey@matthewfreylaw.com

Dated: April 23, 2026

# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION – BAY CITY

IN RE:

**MAGDALENA PEREZ**                              **Case No. 24-21078-dob**
                                                 Chapter 7
Debtor,                                          Hon. Daniel S. Opperman

_____/

**DECLARATION OF DAVID STOCKMAN**

**IN OPPOSITION TO ADVERSARY COMPLAINT AND IN SUPPORT OF DISCHARGEABILITY**

I, David Stockman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

### I. Identity and Background
1. I am a physician and business owner affiliated with Michigan Health Clinics, P.C. and Great Lakes Bay Staffing, Inc.
2. I have direct knowledge of the corporate banking practices, payroll operations, and employee roles relevant to this adversary proceeding.
3. I submit this declaration solely in support of Ms. Magdalena Perez's right to a discharge under Chapter 7. I do not admit liability, and I expressly reserve all defenses and legal positions in the related state court matter.

### II. Business Relationship with Wildfire and Nature of the Transactions
1. In early 2023, Wildfire Credit Union reached out to me. I had never heard of the institution before.
2. Wildfire knew I was leaving Independent Bank.
3. A banker at Independent Bank contacted Wildfire to suggest they recruit my business and divert accounts from Independent and Frankenmuth Credit Union.
4. Wildfire aggressively solicited:
    a. Operating accounts
    b. Payroll processing via ACD
    c. Business lending
5. They stated they "needed our deposits" and asked to justify the relationship internally.
6. Our deposit base was $15–20 million annually; payrolls exceeded $130,000 biweekly.
7. Transactions cited in Wildfire's complaint did occur, but were standard payroll operations.
8. All inconsistencies were resolved almost immediately.
9. There was never any intent to defraud Wildfire; they had full access and transparency.
10. We worked with Wildfire for approximately six months.
11. The $130,000 issue stemmed from **a single transaction**, not a pattern.

12. Wildfire never contacted or notified our corporate counsel before filing the lawsuit.

## III. The Disputed Default Judgment and Procedural Abuse

1. In mid-2024, Wildfire filed suit in state court related to one payroll transaction.
2. I retained Attorney James Kelly, and we entered into active settlement negotiations with Wildfire's attorney, Karl Wenzloff.
3. Wenzloff granted us an extension through August 2, 2024, to respond to the complaint.
4. Although Kelly was acting as my counsel and communicating with Wenzloff, he had not formally appeared in the case.
5. On August 1, 2024, one day before the agreed deadline, Wenzloff filed for default — without notifying Kelly — exploiting the lack of formal appearance.
6. On August 8, 2024, Wenzloff confirmed in writing that Wildfire would consent to set aside the default. In reliance, we did not file emergency motions.
7. Wildfire later refused to honor that agreement and now uses the default to pursue a nondischargeability claim against Ms. Perez.
8. Wildfire has declined to return to state court or litigate the matter on its merits, likely because they know their default was deceitfully obtained. Their choice to shift this to bankruptcy court appears designed to preserve the outcome without judicial scrutiny.

## IV. Perez's Limited Role and the Media Strategy

1. Ms. Perez was an HR and payroll administrator. She had no signing authority or financial control.
2. She followed my directions and did not originate or approve transactions.
3. On August 5, 2024, MLive and ABC12 published misleading articles implying Perez and I engaged in fraud.
4. These articles omitted:
   a. Active settlement discussions
   b. The granted response extension
   c. The written agreement to set aside default

26. I believe Wildfire's counsel, including Wenzloff and possibly Stephen Gaus, were involved in providing or leaking information to the press.

## V. Wildfire's CEO and Complicity

1. Wildfire's CEO, Ben Denay, lives less than ten houses away from me. I have visited his home and regularly play tennis with his wife.
2. Given our personal proximity and the media coverage, Denay's probable claimed ignorance is implausible.
3. His silence and failure to intervene constitute personal ratification of the litigation and reputational damage that followed.

## VI. Settlement Attempts and Final Statement

1. I, along with Attorney James Kelly, made at least ten good-faith efforts to settle this matter.
2. Each time, Wildfire expressed vague interest but refused to finalize terms.

3. They continue to pursue Ms. Perez — a single mother of five — without factual or legal justification.
4. I reject any implication that either she or I acted with intent to deceive or harm Wildfire.
5. Despite this, Wildfire persists in bankruptcy court — not because Perez is liable, but because they know that returning to state court would expose their procedural misconduct.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on May 2, 2025
Saginaw, Michigan

**/s/ David Stockman**
David Stockman
3871 Fortune Blvd
Saginaw, MI 48603
(989) 341-3017
dstockma4@icloud.com

# EXHIBIT 2

UNOFFICIAL COPY





# QUIT CLAIM DEED

KNOW ALL BY THESE PRESENTS: That David Stockman, whose address is 5775 McCarty Rd., Saginaw, MI 48603

Conveys and Quit Claims to Jennifer Stockman, whose address is 5775 McCarty Rd., Saginaw, MI 48603

The following described premises: · **Township of Saginaw, County of Saginaw, State of Michigan**

**Commencing at the Northwest corner of Section 8, Town 12 North, Range 4 East; thence North 89 degrees 59 minutes 14 seconds East, 1026.38 feet to the Point of Beginning; thence continuing North 89 degrees 59 minutes 14 seconds East, 256.3 feet; thence South 01 degrees 02 minutes 53 seconds West 1111.51 feet; thence North 89 degrees 43 minutes 15 seconds West, 427.03 feet; thence North 01 degrees 05 minutes 13 seconds East, 429.35 feet; thence North 89 degrees 59 minutes 14 seconds East, 170 feet; thence North 01 degrees 05 minutes 13 seconds East 680 feet to the point of beginning.**

**Parcel No.: 23-12-4-08-2023-003**

**Common address known as:  5775 McCarty Rd., Saginaw, MI 48603**

Subject to restrictions and easements of record.

For the full consideration of $1.00

Exempt from transfer Tax by MCL 207.505(a) and MCL 207.526(a)

Dated this 11th day of January, 2022.

21-19045

UNOFFICIAL COPY

Signed and Sealed:

David Stockman

State of Michigan)
County of Saginaw)

On January 11, 2022, before me personally appeared David Stockman known to be the persons described in and who executed the foregoing instrument and acknowledged that they executed the same as their free act and deed.

_____
                                    , Notary Public
For the County of                   , State of Michigan
Acting in
My Commission Expires:

LORI A. SCHMEICHEL
NOTARY PUBLIC, STATE OF MI
COUNTY OF BAY
MY COMMISSION EXPIRES Oct 29, 2024
ACTING IN COUNTY OF _Saginaw_

Drafted by: David Stockman , 5775 McCarty Rd., Saginaw, MI 48603

Saginaw County, MI  Page: 2 of 2

# EXHIBIT 3

**MICHIGAN HEALTH CLINIC**
5775 MCCARTY ROAD
SAGINAW MI 48603

**MAGDALENA PEREZ**
EMPLOYEE ID: 5
DEPARTMENT: 100
CHECK:          12131



FEIN: 38-3472092
Pay Period    03/10/2024  -  03/23/2024
Pay Date      03/29/2024

**FITWH**     **Filing Status: H**
**MI**        **Filing Status: S  Exemptions: 10**

| Earnings | RATE | HOUR/UNIT | CURRENT | YTD HOUR/UNIT | YTD |
|---|---|---|---|---|---|
| Salary | | | 4,230.77 | | 29,615.39 |
| **Total** | | | **$4,230.77** | | **$29,615.39** |
| **Total Hours Worked** | | | | | |

| Taxes | CURRENT | YTD |
|---|---|---|
| FITWH | 490.04 | 3,701.96 |
| MED | 61.35 | 429.45 |
| SOC | 262.31 | 1,836.17 |
| MI | 88.27 | 617.89 |
| **Total** | **$901.97** | **$6,585.47** |
| | | |
| **Net Pay** | | **$3,328.80** |

**THIS IS NOT A CHECK. THIS DOCUMENT IS TO BE USED FOR INFORMATIONAL PURPOSES ONLY.**

**MICHIGAN HEALTH CLINIC**
5775 MCCARTY ROAD
SAGINAW MI 48603

74-8013/2724

Check #  12131

Date      03/29/2024

Pay this Amount

| THREE THOUSAND THREE HUNDRED TWENTY EIGHT & 80/100 DOLLARS*** | $*****3,328.80 |
|---|---|

100

Pay to the
Order of

**MAGDALENA PEREZ**
4355 AUGUSTINE ST
SAGINAW MI 48638

# VOID

**FRANKENMUTH CREDIT UNION**
FRANKENMUTH MI

# EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:

MAGDALENA PEREZ,
     Debtor.

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

_____/

WILDFIRE CREDIT UNION,
     Plaintiff,

Adv. Proc. No. 25-02007

vs.

MAGDALENA PEREZ,
     Defendant/Third-Party Plaintiff,

vs.

DAVID STOCKMAN and JENNIFER STOCKMAN,
     Third-Party Defendants.

_____/

**THIRD-PARTY DEFENDANT JENNIFER STOCKMAN'S RESPONSES AND OBJECTIONS TO DEFENDANT/THIRD-PARTY PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**

**NOW COMES** Third-Party Defendant Jennifer Stockman, appearing pro se, and hereby serves her Responses and Objections to Defendant/Third-Party Plaintiff Magdalena Perez's Request for Production of Documents (Docket No. 106) served March 3, 2026, pursuant to Federal Rule of Bankruptcy Procedure 7034 and Federal Rule of Civil Procedure 34, as follows:

**GENERAL OBJECTIONS** The following General Objections are incorporated by reference into each specific response set forth below:

1.  The Requests seek information that is neither relevant to any claim or defense nor proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1).
2.  The Requests are overly broad, unduly burdensome, and constitute an improper fishing expedition into personal, marital financial affairs that bear no relation to the claims for dischargeability of debt under 11 U.S.C. § 523 or the third-party claims for indemnification, contribution, or unjust enrichment.
3.  The Requests invade the privacy of marital assets and are protected by Michigan public policy favoring spousal financial confidentiality absent a direct and substantial nexus to the litigation.

**SPECIFIC RESPONSES AND OBJECTIONS**

**Request No. 1: OBJECTION** – The request seeks information regarding a purely personal, intra-spousal adjustment of title to the marital residence. This transaction has no relation to Magdalena Perez's employment, the debt owed to Wildfire Credit Union, or any claim of indemnification, contribution, or unjust enrichment asserted in the third-party complaint. The request is irrelevant, overbroad, and not proportional to the needs of the case. No documents will be produced.

**Request No. 2:** No responsive documents exist in my possession.

**Request No. 3: OBJECTION** – The request seeks private personal income tax returns that are irrelevant to any claim or defense in this adversary proceeding and are protected by privacy rights under federal and Michigan law. Production is refused on grounds of irrelevance and privacy. No documents will be produced.

**Request No. 4:** No responsive documents exist or are in the possession, custody, or control of Jennifer Stockman. Magdalena Perez was in charge of payroll for the relevant entities.

**Request No. 5:** No responsive documents exist in my possession.

**Request No. 6:** No responsive documents exist in my possession.

Respectfully submitted,

**Dated: April 9, 2026**

**/s/ Jennifer Stockman**
Jennifer Stockman Third-Party Defendant, Pro Se
5775 McCarty Rd
Saginaw, Michigan 48603

# EXHIBIT 5

United States Bankruptcy Court

Eastern District of Michigan – Northern Division

| | | |
|---|---|---|
| In re MAGDALENA PEREZ,<br>Debtor | ) <br> ) | Case No. 24-21078-dob |
| WILDFIRE CREDIT UNION,<br>Plaintiff | ) | Adversary Proceeding: |
| v | ) | 25-02007-DOB |
| MAGDALENA PEREZ.<br>      Defendant/Third-Party Plaintiff | ) <br> ) | Chapter<br>7 |
| V | ) | |
| DAVID STOCKMAN AND | ) | |
| JENNIFER STOCKMAN, | ) | |
| Third-Party Defendants | ) | |
| | ) | |
| | ) | |

MATTHEW L. FREY (P68239)
Attorney for Debtor/Defendant
4901 Towne Centre Road, Suite 235
Saginaw, MI 48604
989-799-2227
mfrey@matthewfreylaw.com

WENZLOFF & FIREMAN, P.C.
Karl L. Wenzloff (P71949)
Attorney for Creditor/Plaintiff
903 N Jackson St
Bay City, MI 48708
989-893-9511
wenzloffbankruptcy@sbcglobal.net

David Stockman and Jennifer Stockman
Pro Se

_____ )

# AFFIDAVIT OF MAGDALENA PEREZ

STATE OF MICHIGAN    )

                    ) §§

COUNTY OF SAGINAW    )

I, Magdalena Perez, am over the age of 18 and otherwise competent to testify as to the facts set forth below, and after being duly sworn, depose and say as follows:

1. I am the Debtor/Defendant/Third-Party Plaintiff in the above-captioned matter.
2. I have personal knowledge regarding the facts set forth herein.
3. I formerly worked for Dr. David Stockman, Michigan Health Clinic and related entities from roughly 2017 until March of 2024.
4. I began my employment with Dr. David Stockman in 2017.
5. Throughout the course of my employment for him and his related entities I advanced in terms of pay and responsibilities until I became involved with his human resources and payroll.
6. During my time at there, I met and was managed by Jennifer Stockman, Dr. David Stockman's spouse.
7. She is the one who trained me on numerous matters during my employment and I believed her to be, until the time I left Michigan Health Clinic, one of my supervisors and/or bosses.
8. I was never made aware at any time that she had either relinquished that role or that I had been promoted to a position where she was not in charge of me and/or other employees as well. If she gave instructions, they were followed.
9. During my time there, I never witnessed her role change.
10. As the person who ran payroll, her pay was always higher than my own.
11. It is my opinion based on my experience there, that she was overpaid for the time she spent working for the various entities.
12. David Stockman was never paid through payroll.
13. I have no direct or indirect knowledge of how he paid his personal bills and from what sources.

14. I did not have the authority, even as purported co-CEO of Great Lakes Bay Staffing Company, to fire or discipline Jennifer Stockman.

15. I did not, independently hire or fire any employees who worked for David Stockman or his controlled entities, including during my time as purported co-CEO of Great Lakes Bay Staffing Company. Any such actions were taken with the cooperation of department heads or other individuals such as David Stockman.

16. Dr. David Stockman would reprimand me for talking to Jennifer Stockman only when it involved company finances, such as complaints I had received about employee or vendor checks not cashing.

17. Jennifer Stockman was the "go to" person when it came to any issues involving Dr. David Stockman as he was sometimes "volatile."

18. Great Lakes Bay Staffing Company was formed to consolidate benefits and payroll for Dr. David Stockman's various medical-related businesses.

19. He had discussed with me the possibility of it become a staffing company for 3rd-parties, but that never happened. No third party was ever solicited to be staffed by Great Lakes Bay Staffing Company to the best of my knowledge, information, and belief. The company existed solely for the benefit of Dr. David Stockman and his controlled companies. There existed no mechanism for me to assert control over the operations of Great Lakes Bay Staffing Company.

20. All employees for Great Lakes Bay Staffing Company, including Jennifer Stockman, came from one of Dr. David Stockman's entities, and returned to them upon the dissolution of Great Lakes Bay Staffing Company.

21. When it came to depositing funds at Wildfire Credit Union or any other financial institution, I obtained the funds or permission to print a check directly from Dr. David Stockman and only in the amounts he authorized.

22. I never had any access to the underlying accounts upon which a draft check or other instrument was drawn upon to verify if the funds were available.

Further affiant sayeth not.



Magdalena Perez


Subscribed and sworn to before me this 22nd day of April, 2026.

Matthew L. Frey, Notary Public
County of Genesee
My Commission Expires: 11/08/2030
Acting in the County of Saginaw