# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:
MAGDALENA PEREZ,

    Debtor.

_____ /

WILDFIRE CREDIT UNION,
    Plaintiff,

vs.

MAGDALENA PEREZ,
    Defendant.

_____ /

MAGDALENA PEREZ
    Third-Party Plaintiff,

v.

JENNIFER STOCKMAN, and
DAVID LEWI EMMANUEL STOCKMAN,
    Third-Party Defendants

_____ /

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

Adv. Proc. No. 25-02007-dob

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND OBJECTIONS TO THIRD-PARTY DAVID STOCKMAN'S REQUESTS FOR ADMISSION, INTERROGATORIES, and REQUESTS FOR PRODUCTION SUBMITTED TO BENJAMIN DENAY**

NOW COMES, Plaintiff, WILDFIRE CREDIT UNION, by and through its attorneys, Wenzloff & Fireman P.C., by Karl L. Wenzloff, and moves pursuant to Bankruptcy Rule 7026 and FRCP 26 for a protective order relieving CEO Benjamin Denay from having to respond to Third-Party Defendant David Stockman's Requests for Admission, Interrogatories, and Requests for Production (Dkt. 130). Plaintiff also objects to each and every request for admission, interrogatory, and request for production submitted to Benjamin Denay on grounds that the proposed discovery is outside the

scope permitted by FRCP 26(b)(1) for reason that the request seeks information not relevant to any party's claim or defense and that such discovery is not proportional to the needs of the case. In support of this motion and these objections, Plaintiff relies on the attached brief. Consent for the relief was sought from the Defendant but not granted.

WHEREFORE, Wildfire Credit Union respectfully requests that the Court grant its Motion and relieve Mr. Denay from having to respond to Stockman's discovery requests.

Date: 5/12/26

Karl L. Wenzloff (P71939), Attorney for Plaintiff
903 N. Jackson, Bay City, MI 48708
Tel (989) 893-9511 • Fax (989) 893-6988
wenzloffbankruptcy@sbcglobal.net

DRAFTED BY WENZLOFF & FIREMAN P.C.

**Exhibit A**

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:
MAGDALENA PEREZ,

      Debtor.

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

_____ /

WILDFIRE CREDIT UNION,
      Plaintiff,

Adv. Proc. No. 25-02007-dob

vs.

MAGDALENA PEREZ,
      Defendant.

_____ /

MAGDALENA PEREZ
      Third-Party Plaintiff,

v.

JENNIFER STOCKMAN, and
DAVID LEWI EMMANUEL STOCKMAN,
      Third-Party Defendants

_____ /

## PROTECTIVE ORDER

    The matter having come before the Court upon Wildfire Credit Union's Motion for Protective Order, and no objection having been filed,

    IT IS THEREFORE ORDERED pursuant to Bankruptcy Rule 7026 and FRCP 26 that Benjamin Denay need not respond to the discovery requests, including the Requests for Admission, Requests for Production, and

Interrogatories, served upon him by Third-Party Defendant, David Stockman on April 13, 2026.

IT IS FURTHER ORDERED that David Stockman may not serve further written discovery upon Benjamin Denay absent further order of this Court.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:
MAGDALENA PEREZ,

       Debtor.

_____/

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

WILDFIRE CREDIT UNION,
       Plaintiff,

Adv. Proc. No. 25-02007-dob

vs.

MAGDALENA PEREZ,
       Defendant.

_____/

MAGDALENA PEREZ
       Third-Party Plaintiff,

v.

JENNIFER STOCKMAN, and
DAVID LEWI EMMANUEL STOCKMAN,
       Third-Party Defendants

_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND OBJECTIONS TO THIRD-PARTY DAVID STOCKMAN'S REQUESTS FOR ADMISSION, INTERROGATORIES, and REQUESTS FOR PRODUCTION SUBMITTED TO BENJAMIN DENAY**

<u>Law</u>

FRCP 26(b)(1) limits the scope of discovery to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering... the parties' relative access to relevant information...., the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(2)(C) states that on the motion of a party, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Rule 26(c) states that, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; [or]... (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."

The Sixth Circuit has written, "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted "to `go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). Regarding protective orders, the Sixth Circuit has stated that prohibiting the discovery from a witness who "ha[s] no personal knowledge of the events or investigation underlying the case" and who "[cannot] provide relevant testimony" is appropriate. *Graves v. Bowles*, 419 Fed.Appx. 640, 645-46 (6th Cir. 2011).

Analysis

I. The Issues involved in this Adversary Proceeding

This Adversary Proceeding is narrow in its scope, concerned with a simple set of facts and questions arising from a specific series of banking transactions. Magdalena Perez and David Stockman opened an account at Wildfire Credit Union in June 2023 in the name of the Great Lakes Bay Staffing Company. Per the Business Service Agreement, they were both personally liable for this share account.

In the months of August and September 2023, the account became negative. Ms. Perez deposited into the account several checks drawn on Michigan Health Clinic. These checks later bounced because they were supported by insufficient funds. Before the checks were returned as NSF, however, the deposited funds had been transferred out of the Wildfire Credit Union account. The account has had a negative balance of $131,255.58 since about September 25, 2023.

Ms. Perez filed bankruptcy in August 2024. The Credit Union filed this Adversary Proceeding against her in January 2025 asserting that the negative checking account could not be discharged in her bankruptcy pursuant to 11 U.S.C. §523(a)(2). Specifically, the Credit Union asserted that Ms. Perez knew or should have known that the checks that were deposited into the Wildfire Credit Union account were not supported by sufficient funds in the Michigan Health Clinic account and that she knew or should have known that the checks were bad at the time the funds were withdrawn from the Wildfire Credit Union account. In short, the Credit Union alleges that the debt arose from a coordinated pattern of deposits and withdrawals involving checks that were unsupported by sufficient funds. This is essentially the entire basis of the Credit Union's case[1].

---

[1] The Credit Union also included a 523(a)(6) claim for willful harm, but the underlying allegations supporting this claim are more or less the same.

Ms. Perez, in turn, added Dr. Stockman as a third-party defendant to this case. She alleges that the transfers and withdrawals into the Credit Union account were done at his behest and that she acted as his agent in making those transactions. She argues that, as her boss, Dr. Stockman should indemnify her against any losses to the Credit Union. She also alleges that as the beneficiary of the withdrawn funds, Dr. Stockman was unjustly enriched by her actions concerning the account.

There are no other claims in this case. Consequently, the factual and legal issues involved in this action are limited. The primary issues in this case are questions concerning: (1) the Defendants' knowledge regarding the sufficiency of the deposited checks, (2) their intent with respect to the transfers and withdrawals, (3) the financial ability of Michigan Health Clinic and Great Lakes Bay Staffing to actually fund the deposits, (4) the Credit Union's reliance upon the transactions, and (5) the allocation of responsibility between Perez and Stockman for the withdrawn funds.

What is not at issue in this case are the issues that Dr. Stockman continually attempts to raise: issues concerning the state court litigation and the default judgment. The default judgment entered against him in state court has absolutely *no* bearing on this case. That is, none of the Credit Union's claims depend upon

the existence, validity, or enforceability of the prior state-court judgment against Dr. Stockman. This is because the claims in the Adversary Proceeding are not concerned with Dr. Stockman's personal liability to the Credit Union. Instead, they arise entirely from the alleged deposits, withdrawals, and representations surrounding the subject account and are solely concerned with the nature of Ms. Perez's debt.

Similarly, the state court judgment is also irrelevant to the determination of Ms. Perez's claims against Dr. Stockman. She is not suing him under the Business Service Agreement, but under theories of contribution and unjust enrichment that don't rely on whether Dr. Stockman is personally liable for the negative account viz the Credit Union.

The issue of the state court judgment is further rendered irrelevant by the fact that the issue of the propriety of the state court judgment and the Credit Union's actions in the state court case have already been litigated before the state court, and the court rendered a decision determining that the judgment should stand and that no fraud had been perpetuated in its attainment. Thus, the Bankruptcy Court does not have jurisdiction or authority pursuant to the doctrines of collateral estoppel and *Rooker-Feldman* to even consider whether the judgment was entered properly or whether Dr. Stockman is liable for this debt.

Thus, the factual issues for which discovery is appropriate in this matter is limited to questions concerning the nature of the withdrawals and deposits into the Credit Union account, the parties' knowledge and intent with respect to such transactions, and the relationship between Dr. Stockman and Magdalena Perez.

II. <u>Benjamin Denay possesses no relevant information.</u>

With that framework in mind, it is clear that Benjamin Denay is not a proper subject for discovery in this case. Mr. Denay is the current CEO of Wildfire Credit Union, but he was not CEO at the time that the Great Lakes Bay Staffing account became negative. He started this position in January 2024, several months *after* the transactions at issue in this case. He did not work for the Credit Union in any capacity at the time the account was opened, the bad checks were deposited, the funds were withdrawn, or the account became negative. The only information concerning these transactions in his possession would be information that he learned long after the transactions transpired.

Furthermore, as CEO, Mr. Denay does not closely monitor individual accounts or make day-to-day decisions concerning the collection of debts. These are tasks delegated to other departments and employees. For instance, the Credit Union's collection department makes the decision of when to initiate a lawsuit, authorizes the Credit Union's attorney to take specific litigation actions, and

determines how a particular debt should be settled. The CEO is generally not directly involved in such decision-making.

Accordingly, Mr. Denay has no unique, first-hand, non-privileged knowledge pertaining to this case, except that which he obtained second-hand long after the transactions occurred and after he had become the CEO. Consequently, he has no material information that would be of consequence to the Credit Union's claims in this case or Dr. Stockman's defenses. The burden and expense of responding to Dr. Stockman's proposed discovery outweighs its likely benefit to Dr. Stockman.

III. The Discovery Requests Submitted to Benjamin Denay Are Irrelevant, Harassing, and Oppressive

The Bankruptcy Court should exercise its discretion to grant Wildfire Credit Union and Benjamin Denay a protective order from answering Dr. Stockman's Requests for Admission. None of these requests serve a legitimate discovery purpose, and many are calculated only to annoy, embarrass, or harass Mr. Denay. For instance, a third of the requests (1, 2, 3, 4, 5, 12, 13, 14, and 15) concern Mr. Denay's prior employment at Garber Management Group and imply that Mr. Denay engaged in improper behavior in that position. Mr. Denay's prior employment is completely beyond the scope of this case, and there is no reason for

Dr. Stockman to seek information about it other than to annoy, embarrass, and harass Mr. Denay.

The remaining requests are irrelevant and do not help to resolve or narrow the issues involved in this adversary proceeding. Almost all of these requests concern the state court litigation and entry of the default judgment (6, 7, 8, 11, 17, 18, 19, 26), which, as discussed above, bears no impact on the current matter. Several of these requests (8, 9, 10, 11, 20, 21) pertain to Dr. Stockman's false claim that Mr. Denay conspired to default Dr. Stockman prematurely and leak this information to the press. But even assuming those allegations were true (which the Credit Union denies), they would have no bearing on the claims or defenses pending in this adversary proceeding. Several requests concern the relationship between Dr. Stockman and Mr. Denay, including two (22, 23) that ask him to admit he went to Jennifer Stockman's birthday party. Clearly it makes no difference to the Credit Union's lawsuit whether Mr. Denay and Dr. Stockman were socially acquainted.

In short, the Requests for Admission submitted to Mr. Denay are not a genuine attempt to obtain information useful to the case or to narrow the issues of dispute, but an attempt to burden, harass, and annoy Mr. Denay. The Requests are

an abuse of Rule 36.  As such, this Court should issue an order protecting Mr. Denay from having to answer these requests.

Dr. Stockman's Requests for Production and Interrogatories are similarly abusive.  Over half of his Interrogatories (1 – 10, 18 – 25) and half of the Requests for Production (1 – 9) are concerned with Mr. Denay's role at Garber Management. The remaining Interrogatories and Requests for Production again concern themselves strictly with the state court litigation, the entry of default, or Mr. Denay's personal acquaintance with Dr. Stockman.  Most tellingly, none of the Interrogatories or Requests for Production inquire about the Great Lakes Bay Staffing account - the primary factual issue driving this case.

For these reasons, Wildfire Credit Union and Benjamin Denay have established good cause for the entry of a protective order under Rule 26(c).  The discovery directed to Mr. Denay seeks information that is irrelevant to the claims and defenses actually pending in this adversary proceeding and imposes an undue burden wholly disproportionate to any conceivable benefit.  Rather than seeking information concerning the Great Lakes Bay Staffing account or the transactions that gave rise to this case, David Stockman seeks to use discovery as a vehicle to re-litigate prior cases, pursue personal grievances, and harass a corporate officer who possesses no unique, first-hand knowledge of the operative facts.

Accordingly, Wildfire Credit Union respectfully requests that this Court enter a protective order prohibiting Mr. Denay from having to respond to Dr. Stockman's Requests for Admission, Interrogatories, and Requests for Production, and granting such other and further relief as the Court deems just and appropriate.

Date: 5/12/26

Karl L. Wenzloff (P71939), Attorney for Plaintiff
903 N. Jackson, Bay City, MI 48708
Tel (989) 893-9511 • Fax (989) 893-6988
wenzloffbankruptcy@sbcglobal.net

DRAFTED BY WENZLOFF & FIREMAN P.C.

# EXHIBIT C

IN RE:
MAGDALENA PEREZ,

    Debtor.

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

_____/

WILDFIRE CREDIT UNION,
    Plaintiff,

Adv. Proc. No. 25-02007-dob

vs.

MAGDALENA PEREZ,
    Defendant.

_____/

MAGDALENA PEREZ
    Third-Party Plaintiff,

v.

JENNIFER STOCKMAN, and
DAVID LEWI EMMANUEL STOCKMAN,
    Third-Party Defendants

_____/

## NOTICE OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND OBJECTIONS TO THIRD-PARTY DAVID STOCKMAN'S REQUESTS FOR ADMISSION, INTERROGATORIES, and REQUESTS FOR PRODUCTION SUBMITTED TO BENJAMIN DENAY

WILDFIRE CREDIT UNION has filed papers with the Court on a Motion for Protective Order and Objections to Third Party Defendant's Requests for Admission, Interrogatories, and Requests for Production Submitted to Benjamin Denay.

**YOUR RIGHTS MAY BE AFFECTED**. You should read these papers carefully and discuss them with your attorney, if you have one in this Bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant an Order Granting Wildfire Credit Union's Motion for Protective Order, or if you want the Court to consider your views on the Motion, within fourteen (14) days, you or your attorney must:

    1.    File with the Court a written response or an answer, explaining your position at:

    U.S. Bankruptcy Court | 111 First Street, P.O. Box 911, Bay City, MI 48708

If you mail your response to the Court for filing, you must mail it early enough so that the Court will **receive** it on or before the date stated above. You must also mail a copy to:

Karl L. Wenzloff, Attorney for Wildfire Credit Union | 903 N. Jackson Street, Bay City, MI 48708 | (989) 893-9511

2.      If a response or answer is timely filed and served, the clerk will schedule a Hearing on the Motion and you will be served with a Notice of the date, time and location of the Hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the Motion and may enter the Protective Order.**

DATE:      May 12, 2026

KARL L. WENZLOFF (P71939), Attorney for
Wildfire Credit Union
903 North Jackson Street, Bay City, MI 48708
(989) 893-9511
wenzloffbankruptcy@sbcglobal.net

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:

MAGDALENA PEREZ,
    Debtor.

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

_____/

WILDFIRE CREDIT UNION,
    Plaintiff,

Adv. Proc. No. 25-02007

vs.

MAGDALENA PEREZ,
    Defendant/Third-Party Plaintiff,

vs.

DAVID STOCKMAN and JENNIFER STOCKMAN,
    Third-Party Defendants.

_____/

**THIRD-PARTY DEFENDANT DAVID STOCKMAN'S SECOND SET OF
INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR
ADMISSION TO BENJAMIN DENAY, AS CHIEF EXECUTIVE OFFICER OF
PLAINTIFF WILDFIRE CREDIT UNION**

Pursuant to Federal Rules of Bankruptcy Procedure 7033, 7034, and 7036, Third-Party
Defendant David Stockman propounds the following Second Set of Interrogatories, Requests for
Production, and Requests for Admission to Benjamin Denay, individually and in his capacity as
Chief Executive Officer of Plaintiff Wildfire Credit Union. Full, verified written answers and
responsive documents must be served within thirty (30) days of service.

**DEFINITIONS** "Garber Management Group" means Garber Management Group, Inc. and all
affiliates. "PPP Loan" means the first-draw Paycheck Protection Program loan in the amount of
eight hundred sixty-four thousand seven hundred thirty-two dollars obtained in May 2020. "FCA
Settlement" means the December 29, 2025 settlement in United States ex rel. David Reed v.
Garber Management Group, Inc., Case No. 1:24-cv-13126 (Eastern District of Michigan).
"August 1 Default Filing" means the Request for Entry of Default and Default Judgment filed on
August 1, 2024 in Saginaw County Circuit Court Case No. 24-0000909-CB. "August 16
Stipulated Order" means the stipulated order reopening or setting aside the default judgment
entered on or about August 16, 2024. "Business Services Agreement" means the agreement
containing the binding arbitration clause. "State-Court Action" means Wildfire Credit Union v.
Stockman, Perez, and Great Lakes Bay Staffing, Inc., Saginaw County Circuit Court Case No.
24-0000909-CB. "Default Judgment" means the default judgment entered August 1, 2024, in the
State-Court Action. "Document" and "Communication" have the meanings set forth in Federal

Rule of Civil Procedure 34(a)(1)(A) and include, without limitation, text messages, emails, letters, memoranda, notes, and all electronically stored information.

## INTERROGATORIES

1. State your exact title or titles, reporting structure, and primary responsibilities at Garber Management Group from January 1, 2020 through December 31, 2020.
2. Identify every individual by name and title who participated in preparing, reviewing, approving, or submitting the PPP Loan application to Bank of America and the Small Business Administration in May 2020.
3. Did you personally review, approve, or sign any certification regarding employee aggregation rules or the Small Business Administration franchise identifier code for the PPP Loan? If yes, describe your involvement in detail.
4. At the time the PPP Loan was submitted, were you aware of the Small Business Administration employee-aggregation rules, including the five-hundred-employee cap, and the requirement that Garber Management Group aggregate employees with affiliates unless it possessed a valid Small Business Administration franchise identifier code?
5. Did Garber Management Group possess a valid Small Business Administration franchise identifier code at any time in 2020? If yes, identify the code and the franchisor.
6. Identify all communications you had with Patrick Hengesbach, Richard Garber, or any Garber executive regarding PPP Loan eligibility, aggregation rules, or franchise status.
7. Describe your involvement, if any, in the negotiations or execution of the FCA Settlement on or about December 29, 2025.
8. State the total number of employees across all Garber Automotive Group affiliates as of the date the PPP Loan application was submitted.
9. Identify every document you reviewed or relied upon when determining PPP Loan eligibility.
10. Were you aware that twenty-one Garber-related entities collectively received fifteen million nine hundred thirty thousand one hundred twenty dollars in Paycheck Protection Program loans in 2020?
11. Describe in detail your personal involvement, if any, in the decision to file the August 1 Default Filing in Saginaw Circuit Court Case No. 24-0000909-CB, including whether you reviewed or approved the timing of the filing one day before the agreed Michigan Court Rule 2.507(G) extension deadline.
12. State whether you were aware, prior to August 1, 2024, of the written agreement between counsel to extend the responsive-pleading deadline under Michigan Court Rule 2.507(G) and of the binding arbitration clause in the Business Services Agreement.
13. Identify every communication, including email, text, call, or meeting, you had with Karl Wenzloff, Steven Gaus, Ken Voelker, or any Wildfire executive regarding the August 1 Default Filing, the decision to conceal the arbitration clause, or the decision to file despite the agreed extension.
14. Describe any discussions or approvals you gave concerning coordination with media outlets, including ABC12/WJRT, MLive, or Becker's, in connection with the August 1 Default Filing.

15. State whether you personally reviewed, approved, or authorized the August 16 Stipulated Order to Reopen the Saginaw Circuit Court case, and identify all communications concerning that order.
16. Describe all instances, including dates, participants, and content, where Steven Gaus was present in any communication, email, phone call, text, or meeting with you, Karl Wenzloff, Ken Voelker, or any Wildfire executive regarding the August 1 Default Filing, media coordination, or the Saginaw Circuit Court case.
17. State whether the default judgment was filed on August 1, 2024 and released to the media for a story published to the public on August 5, 2024. Explain in detail how and why the default was not actually filed with the courts until August 6, 2024.
18. State whether you personally certified, signed, or authorized any document submitted to the Small Business Administration or Bank of America in connection with the PPP Loan or its forgiveness.
19. Identify the person or persons at Garber Management Group who had final authority to approve the PPP Loan application and any forgiveness request.
20. Were you ever advised, internally or by outside counsel, that Garber Management Group was ineligible for the PPP Loan because of the employee-aggregation rules? If yes, identify the date and source of that advice.
21. Describe any internal audits, compliance reviews, or risk assessments conducted at Garber Management Group in 2020 concerning PPP Loan eligibility.
22. Did you receive or review any communication from the Small Business Administration or Bank of America flagging potential ineligibility of the PPP Loan after disbursement? If yes, describe your response.
23. State whether you had any personal financial incentive, including bonus, commission, equity, or other benefit, tied to the receipt or forgiveness of the PPP Loan.
24. Identify every communication you had with any Garber executive, attorney, or representative concerning the qui tam complaint filed by David Reed prior to the December 29, 2025 FCA Settlement.
25. Describe your role, if any, in the decision to pay one million five hundred thirteen thousand two hundred eighty-one dollars to resolve the FCA allegations without admitting liability.
26. State the exact date in January 2024 when you became Chief Executive Officer of Wildfire Credit Union.
27. Describe in detail your personal approval or authorization of the filing of the State-Court Action in 2024.
28. Identify and describe every Communication (including all text messages) between you and Dr. David Stockman at any time.
29. Identify every Communication of any kind between you and Dr. David Stockman after April 2024.
30. State the date on which you first became aware of the State-Court Action and any claim against Dr. David Stockman or Magdalena Perez.
31. Identify every email or other Communication in which you saw Steven Gaus listed as a party, whether as sender, recipient, or copied (CC or otherwise).
32. Describe in detail any and all discussions or decisions you made concerning the State-Court Action despite your personal and social relationship with the Stockman family and

your awareness of settlement negotiations between counsel extending as far back as June 2024.

## REQUESTS FOR PRODUCTION

1. All emails, notes, calendars, or memoranda from 2020 concerning the PPP Loan application, aggregation rules, or franchise status.
2. The complete FCA Settlement agreement and payment records.
3. All org charts or job descriptions showing your role at Garber Management Group in 2020.
4. All documents provided to or received from the Small Business Administration or Bank of America regarding the PPP Loan or forgiveness.
5. All documents reflecting communications about the Reed qui tam action.
6. All emails, notes, texts, or memoranda from July through August 2024 concerning the August 1 Default Filing or the August 16 Stipulated Order.
7. All internal Garber Management Group emails, memos, or notes from 2020 concerning PPP Loan eligibility, aggregation rules, franchise status, or employee counts.
8. All documents reflecting communications between you and the Small Business Administration, Bank of America, or Department of Justice regarding the PPP Loan or the FCA Settlement.
9. Your personal performance reviews, bonus calculations, or compensation records from Garber Management Group for 2020.
10. All text messages exchanged between You and Dr. David Stockman at any time.
11. All Communications of any kind exchanged between You and Dr. David Stockman at any time.
12. All emails sent or received by You that relate to the alleged debt, the State-Court Action, the Default Judgment, or the Nondischargeability Complaint, including but not limited to any emails exchanged with Wildfire Credit Union officers, employees, counsel (including Karl L. Wenzloff or Steven Gaus), or any other third party.
13. All Documents reflecting the date upon which You first became Chief Executive Officer of Wildfire Credit Union.
14. All Documents reflecting the date upon which You first became aware of the State-Court Action, the Default Judgment, or any claim against Dr. David Stockman or Magdalena Perez.
15. All Documents reflecting any discussion or decision by You, as Chief Executive Officer, to pursue the State-Court Action and/or the Nondischargeability Complaint despite Your personal and social relationship with the Stockman family and Your awareness of settlement negotiations between counsel.
16. All Documents reflecting Your awareness of negotiations between counsel in the State-Court Action extending as far back as June 2024.
17. All emails or other Communications in which You saw Steven Gaus listed as a party, whether as sender, recipient, or copied (CC or otherwise).

## REQUESTS FOR ADMISSION

1. Admit that you held a senior finance position, Controller or equivalent, at Garber Management Group in 2020 with responsibility for financial certifications.
2. Admit that Garber Management Group did not possess a valid Small Business Administration franchise identifier code in 2020.
3. Admit that Garber Management Group was required to aggregate employees and revenue with affiliates for Paycheck Protection Program eligibility.
4. Admit that aggregated with affiliates, Garber Management Group exceeded the five-hundred-employee cap.
5. Admit that the United States alleged false certifications for the PPP Loan and resolved the matter by payment of one million five hundred thirteen thousand two hundred eighty-one dollars on or about December 31, 2025.
6. Admit that you, as Chief Executive Officer of Wildfire Credit Union, personally approved or authorized the filing of the August 1 Default Filing despite the agreed Michigan Court Rule 2.507(G) extension and the arbitration clause in the Business Services Agreement.
7. Admit that you personally approved or authorized the August 16 Stipulated Order to Reopen the Saginaw Circuit Court case.
8. Admit that the purpose of the August 1 Default Filing included reputational harm and media amplification.
9. Admit that you have ever met Steven Gaus in person.
10. Admit that Karl Wenzloff ever mentioned Steven Gaus to you in any conversation.
11. Admit that you coordinated the August 1, 2024 default judgment filing and the subsequent media release with MLive, Cole Waterman, Steven Gaus, and ABC12/WJRT.
12. Admit that you know Marcus Atkins.
13. Admit that you held a senior finance position at Garber Management Group in 2020 with authority over financial certifications submitted to the federal government.
14. Admit that Garber Management Group made false certifications to obtain the PPP Loan.
15. Admit that the FCA Settlement resolved allegations that Garber Management Group was ineligible for the PPP Loan due to employee aggregation rules.
16. Admit that You became Chief Executive Officer of Wildfire Credit Union in January 2024.
17. Admit that You approved the filing of the State-Court Action in 2024.
18. Admit that You first became aware of the State-Court Action involving Dr. David Stockman, Magdalena Perez, and Great Lakes Bay Staffing, Inc. on or before April 2024.
19. Admit that You were aware of negotiations between counsel for the parties in the State-Court Action extending as far back as June 2024.
20. Admit that You have heard the name Steven Gaus.
21. Admit that You have seen emails in which Steven Gaus was a party, whether as sender, recipient, or copied (CC or otherwise).
22. Admit that You attended the birthday celebration of Jennifer Stockman held in May 2024.
23. Admit that, at the time You attended Jennifer Stockman's birthday celebration in May 2024, You were fully aware that the State-Court Action had been filed against Dr. David Stockman and Magdalena Perez.
24. Admit that You continued to engage in personal communications with Dr. David Stockman after the filing of the State-Court Action in April 2024.

25. Admit that Your continued personal and social relationship with Dr. David Stockman and Jennifer Stockman after the filing of the State-Court Action is inconsistent with any allegation that the underlying debt arose from fraud, false pretenses, or willful and malicious injury on the part of Magdalena Perez or Dr. David Stockman.
26. Admit that no fraudulent intent or malicious injury was communicated to You by Dr. David Stockman or Magdalena Perez at any time prior to or during the events giving rise to the alleged debt.

Respectfully submitted,

/s/ David Stockman
David Stockman, Third-Party Defendant, Pro Se
3871 Fortune Blvd. Saginaw, MI 48603
Telephone: 989.341.3017
Email: dstockma4@icloud.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system and by first-class U.S. Mail, postage prepaid, upon all counsel of record and parties entitled to notice, including counsel for Plaintiff Wildfire Credit Union and Defendant/Third-Party Plaintiff Magdalena Perez.

/s/ David Stockman
David Stockman, Third-Party Defendant, Pro Se
3871 Fortune Blvd. Saginaw, MI 48603
Telephone: 989.341.3017
Email: dstockma4@icloud.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:
MAGDALENA PEREZ,

    Debtor.

_____/

WILDFIRE CREDIT UNION,
    Plaintiff,

vs.

MAGDALENA PEREZ,
    Defendant.

_____/

MAGDALENA PEREZ
    Third-Party Plaintiff,

v.

JENNIFER STOCKMAN, and
DAVID LEWI EMMANUEL STOCKMAN,
    Third-Party Defendants

_____/

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

Adv. Proc. No. 25-02007-dob

## CERTIFICATE OF SERVICE

I hereby certify that on the date set out below I served a copy of the following document(s) upon each of the parties listed below.

*PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND OBJECTIONS TO THIRD-PARTY DAVID STOCKMAN'S REQUESTS FOR ADMISSION, INTERROGATORIES, and REQUESTS FOR PRODUCTION SUBMITTED TO BENJAMIN DENAY,*
    *PROPOSED ORDER*
    *BRIEF IN SUPPORT*
    *NOTICE OF MOTION*
    *EXHIBIT D, STOCKMAN'S DISCOVERY REQUEST TO BENJAMIN DENAY*
    *CERTIFICATE OF SERVICE*

Served electronically via the Court's ECF system:

Matthew Lee Frey:  mfrey@matthewfreylaw.com

A copy was emailed to David Stockman at dstockma4@icloud.com.

Served via United States Postal Service with the proper amount of postage affixed thereon:

David Stockman
3871 Fortune Blvd.
Saginaw, MI 48603

Jennifer Stockman
5775 McCarty Road
Saginaw, MI 48603

Date:  5/12/2026  /s/ Karl L. Wenzloff
Karl L. Wenzloff (P71939), Attorney for Plaintiff
903 N. Jackson, Bay City, MI 48708
(989) 893-9511
wenzloffbankruptcy@sbcglobal.net