## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:
MAGDALENA PEREZ,

    Debtor.

_____/

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

WILDFIRE CREDIT UNION,
    Plaintiff,

Adv. Proc. No. 25-02007-dob

vs.

MAGDALENA PEREZ,
    Defendant.

_____/

MAGDALENA PEREZ
    Third-Party Plaintiff,

v.

JENNIFER STOCKMAN, and
DAVID LEWI EMMANUEL STOCKMAN,
    Third-Party Defendants

_____/

## WILDFIRE CREDIT UNION'S ANSWERS TO THIRD-PARTY DEFENDANT'S REQUESTS FOR PRODUCTION

NOW COMES Plaintiff, Wildfire Credit Union, by and through its counsel, Wenzloff & Fireman, P.C. responds and answers the Third-Party Defendant's Requests for Admission as follows:

### REQUESTS FOR PRODUCTION

1. Produce all internal risk-management policies, overdraft-limit guidelines, NSF protocols, account-freeze procedures, compliance manuals, and exception-approval matrices in effect during the Relevant Period, including any revisions, waivers, or exceptions applied to any of the Accounts, together with all documents showing the involvement, review, or approval of any Employee in the creation, modification, or disregard of such policies.

ANSWER: See attached: 1.) Standard Check Hold Guidelines Programmed into Credit Union's Mainframe System; 2.) New Account Opening Procedures; 3.) Funds Availability of Deposits; 4.) NSF Noticing Procedure; 5.) Emails dated July 3, 2023 between Stockman, Perez, Ann Ray, John Harken, Stacey Bothe, and Mary Bryant concerning immediate access to deposited funds; 6.) Note Activity showing Automatic Override instituted on July 3, 2023 and removed on September 7, 2023

2. Produce all emails, text messages, Slack messages, Microsoft Teams communications, or other electronic correspondence from January 1, 2023 through August 31, 2024, involving any Employee that references Great Lakes Bay Staffing, Inc., David Stockman, Steven Gaus, any of the Accounts, overdraft activity, NSF checks, uncollected funds, payroll wires, ACH transfers, or the decision to continue processing transactions while any Account was in overdraft territory.

ANSWER: See emails identified in response to Request #1 above. Also see attached emails: a. Emails between Stockman and Ann Ray dated March 29, 2023; b. Emails from March 30, 2023 between John Harken, Ann Ray, Angela Hine, and Stockman; c. Email from John Harken to Ann Ray on April 3, 2023; d. Emails from July 3, 2023 between Stockman, Perez, Harken, Ray, and Stacey (also included in answer to Request #1); e. August 8, 2023 email from John Harken to Ann Ray; f. August 24, 2023 email from Megan Lowe to Ann Ray; g. August 24, 2023 emails between Ann Ray and David Stockman; h. August 24, 2023 emails between Ann Ray and David Stockman; i. August 24, 2023 emails between Ann Ray and David Stockman; j. August 31, 2023 email from Courtney Doupounce to Ann Ray; k. August 31, 2023 emails between David Stockman and Ann Ray; l. Emails between Jennifer Lemaire to Ann Ray dated August 31, 2023; m. Emails from September 6, 2023; n. Emails between Darlene Stodolak and Jennifer Lemaire dated September 7, 2023; o. Email from Stacey Bothe to Ann Ray dated September 7, 2023; p. Emails from September 11, 2023 between Darlene Stodolak and Liz Reehl; q. Emails from September 11, 2023 between Sylvia Christenson and Tracy Kaufman; r. Emails between Tracy Kaufman and Andrea Hales dated September 11, 2023; s. Email exchange between Tracy Kaufman and Lindsay LaPierre dated September 12, 2023 through September 15, 2023; t. Email from Perez to Ann Ray dated November 7, 2023; u. Email between Tracy Kaufman and Ann Ray dated November 7, 2023; v. Emails from December 5, 2023 between Liz Reehl and Tracy Kaufman; w. Email from Perez to Ann Ray dated May 29, 2024; x. Email dated June 10, 2024 from Tracy Kaufman to Ann Ray; y. Email from Tracy Kaufman to Executives dated June 12, 2024 (a portion of this email was redacted to remove a privileged reference to attorney legal advice); z. Email from Ken Voelker to Tracy Kaufman dated June 12, 2024; aa. Account notes from Tracy Kaufman added on September 12, 2023; bb. Collection Notes through September 26, 2023 – all later notes are privileged as communications with counsel.

Object to production of any correspondence between Plaintiff and its counsel pursuant to attorney-client privilege and attorney work product doctrine (emails between counsel and client exist but are excluded from production).

3. Produce the complete timeline of the opening, closing, or modification of all Accounts at Wildfire Credit Union, including all account-opening documents, signature cards, resolutions, and any correspondence or internal notes related thereto.

ANSWER: See answers to above requests. For a history of the deposits, withdrawals, and charges to the account, see the attached Account Transaction Statements from June 2023 through October 2023 and the Account Transaction History. For account-opening documents, see attached Business Service Agreement, Parts I and II.

4. Produce all loan applications, loan documents, personal guaranties, or credit extensions submitted to or approved by Wildfire Credit Union involving Great Lakes Bay Staffing, Inc., Magdalena Perez, David Stockman, Jennifer Stockman, or any affiliated entity.

ANSWER: David Stockman submitted some loan applications on behalf of Michigan Health Clinic. See attached applications (slightly redacted to remove some personal information). Not included with this answer is the documentation submitted by Dr. Stockman and Michigan Health Clinics in support of and in conjunction with their loan application (for example: his personal tax returns for 2019, 2020, 2021 or real estate appraisals for several buildings he owned). Because Dr. Stockman is already in possession of such information, because such information is irrelevant to the underlying case, and because the documentation is voluminous, it is not being provided at this time. Upon request, however, the Credit Union will provide copies of such documents.

5. Produce the specific personal guaranty agreement, personal guarantee form, signature page, or any other document executed by or on behalf of David Stockman and/or Magdalena Perez that allegedly imposes personal liability or guarantee for the obligations of Great Lakes Bay Staffing, Inc. or any of the Accounts at Wildfire Credit Union.

ANSWER: See Business Service Agreement, Parts I and II (specifically Paragraphs 1(e), 6(k), and 20 of Part II) attached in response to Request #3. See also attached Fund/Wire Transfer Agreement and Your Responsibilities for Insufficient Funds & Overdrafts.

6. Produce all monthly account statements, transaction ledgers, and itemized transaction histories for the Great Lakes Bay Staffing, Inc. business checking account for the Relevant Period, including all NSF returns, overdraft notices, wire transfers, ACH transfers, and payroll runs.

ANSWER: See attached Account Transaction Statements and Transaction History (same documents produced in response to Request #3 above). See also attached Notice of Insufficient Funds sent to account holder. See also attached Returned Check Advice. See also attached call records for phone calls made to Stockman or Perez regarding the negative account.

7. Produce the complete transaction ledger and itemized transaction history of the Great Lakes Bay Staffing, Inc. business checking account for its entire history of existence at Wildfire Credit Union,

including all deposits, withdrawals, NSF returns, overdraft notices, wire transfers, ACH transfers, payroll runs, and any related matter.

ANSWER: See Account Transaction Statements and Transaction History attached as answers to Request #3 above.

8. Produce all internal bank logs, memos, notes, risk-management reports, compliance reviews, or communications (including emails, text messages, and entries on any messaging platform) concerning any of the Accounts that reference NSF checks, uncollected funds, overdraft monitoring, or account freezes, including any communications involving any Employee.

ANSWER: See documents produced in response to Requests above. No risk-management reports or compliance reviews concerning the Account were created.

9. Produce all documents reflecting Wildfire Credit Union's decision to honor NSF checks or release uncollected funds for payroll wires and ACH transfers on any of the Accounts, including any approval forms, internal authorizations, or overrides of standard NSF or overdraft protocols involving any Employee.

ANSWER: See Answers to Requests #1 and #2 above, specifically emails from July 3, 2023 and Note Activity.

10. Produce all documents reflecting Wildfire Credit Union's failure to freeze any of the Accounts or to provide timely notice of NSF returns or overdraft activity, including any internal policies or procedures that were disregarded and any communications between bank personnel and any Employee concerning such decisions.

ANSWER: Object to Defendant's framing of this Request – Credit Union did provide timely notice of NSF returns and overdraft activity and no internal policies were disregarded. See Answers to Requests #1, #2, and #6 above, including notices of NSF returns.

11. Produce all communications between Wildfire Credit Union personnel (including any Employee) and any third parties regarding any of the Accounts' overdraft activity, payroll processing, or collection efforts during the Relevant Period.

ANSWER: Outside of legal counsel and the Defendants themselves, the Credit Union communicated with no other third party concerning this Account. The communications with counsel will not be produced because they are protected by the attorney/client privilege.

12. Produce copies of any Board minutes, executive committee notes, or risk-management committee reports in which any Employee participated that discuss any of the Accounts, overdraft practices, risk exposure, or the decision to pursue personal liability rather than corporate remedies.

ANSWER: There were no Board level or executive committee meetings regarding the Account or the decision to file suit. During the November 13, 2023 meeting, the Account was identified as a share account to be charged off. See attached Board of Directors meeting agenda from November 2023 with notes from Tracy Kaufman.

13. Produce all exhibits and attachments to Wildfire Credit Union's Complaint (Doc. 1) in their native electronic format, including any underlying transaction data or metadata not visible in the PDF versions already filed.

ANSWER: To the best of the Credit Union's knowledge, all pertinent "metadata" for the exhibits has been provided. See Docusign proofs attached to Business Service Agreement, wire transfer agreement, etc.

14. Produce all internal policies, procedures, training manuals, and compliance guidelines in effect during the Relevant Period concerning the bank's duty to exercise ordinary care under Mich. Comp. Laws 440.3406, 440.4401, and 440.4406, including any statements of account, notice of payment requirements, and overdraft discretionary provisions contained in the Business Services Agreement.

ANSWER: See Answers to Requests #1 above for copies of written procedures and guidelines.

15. Produce all documents reflecting the date(s) on which Wildfire Credit Union sent or made available any statement of account to the account holder or authorized signers for any of the Accounts, together with proof of mailing, electronic delivery logs, or other evidence of actual transmission.

ANSWER: See Account Transaction Statements attached as a response to Answer to Request #3. Each month, the Credit Union's system automatically generates the monthly statement file for all accounts that are flagged. The statement file is in statement file format, and this format is not easily readable as it provides all information in a field position format that lines up with the fields on at the statement processor. Fields are used to ensure the statements are printed with required information to appear in the proper places. Each month the Credit Union's IT department securely transfers the statement file to our statement processor (Doxim). Doxim loads the statement file into their system, and generates monthly account statements in written and electronic format (for members on e-statements). Doxim mails out all paper copy member statements on the Credit Union's behalf.

16. Produce all documents reflecting any internal approval, override, or ratification by any Employee of the continued honoring of NSF checks or release of uncollected funds for payroll wires and ACH transfers on any of the Accounts after such Account had already entered overdraft territory, including any approval forms, escalation memos, exception logs, or "override" authorizations issued during the Relevant Period.

ANSWER: See Answer to Requests #1 and #2.

17. Produce all performance reviews, disciplinary records, or internal investigations of any Wildfire Credit Union employee that reference the handling of any of the Accounts, NSF returns, overdraft monitoring, or failure to follow risk-management protocols during the Relevant Period.

ANSWER: There is a disciplinary record of an employee relating to the Account, but the Credit Union objects to the production of the disciplinary record or performance review for reason that information sought is privileged under the Bullard-Plawecki Act and is unnecessary, irrelevant, and intended solely to embarrass, harass, or vex the employee for whom the records are being sought.

18. Produce all documents reflecting any internal audit, compliance review, or risk-assessment report concerning any of the Accounts or Wildfire Credit Union's general overdraft and NSF practices during the Relevant Period, including any findings or recommendations that were ignored or overridden by any Employee.

ANSWER: No audits, compliance reviews, or risk assessment reports were issued with respect to this Account or concerning the Credit Union's overdraft practices during the Relevant Period.

19. Produce all communications, including emails, telephone call logs, voicemail transcripts, notes of telephone calls, letters, or other written or electronic correspondence between Wildfire Credit Union (or any Employee) and Magdalena Perez or David Stockman regarding any outstanding debt, collection efforts, demand for payment, or the amounts claimed due in Wildfire Credit Union's Complaint (Doc 1).

ANSWER: See Answers to Requests #1, #2, and #6 above. See also attached letters to Defendants sent by Plaintiff's counsel.

20. Produce all documents reflecting the decision-making process by which Wildfire Credit Union elected to pursue personal nondischargeability litigation against Magdalena Perez rather than absorbing the loss caused by its own banking decisions on any of the Accounts, including any communications involving any Employee or counsel.

ANSWER: Object for reason that this Request asks for legal strategy and communications between the Credit Union and its legal counsel, which information is privileged and/or protected by the

work product doctrine and attorney-client privilege. Further object for reason that the underlying premise (that the Credit Union's loss is a result of its own decisions) is false. Further object for reason that the information being sought is irrelevant to the claims or defenses of the parties to this action.

21. Produce the complete Business Services Agreement (BSA) between Wildfire Credit Union and Great Lakes Bay Staffing Company, including all exhibits, amendments, addenda, and any revisions to Section 11 (arbitration clause) or any other provision concerning dispute resolution, overdraft services, or good-faith performance.

ANSWER: See attached as Answers to Request #3.

22. Produce all communications, internal memoranda, emails, or notes (including those involving any Employee or counsel) concerning the decision to commence the Saginaw County Circuit Court action instead of submitting the dispute to arbitration as required by Section 11 of the BSA.

ANSWER: Object to the extent this Request asks for communications between the Credit Union and its legal counsel, which information is privileged and/or protected by the work product doctrine. Further object for reason that the underlying premise (that this matter should have been arbitrated) is false. Otherwise see Answer to Request #2.

23. Produce the August 8, 2024 written stipulation/email from Karl Wenzloff (or any other Wildfire representative) confirming agreement to set aside the default judgment, together with all related correspondence, drafts, and internal notes regarding the stipulation and the subsequent Stipulated Order to Set Aside Default.

ANSWER: Object to the extent that this Request asks for communications between the Credit Union and its legal counsel, which information is privileged and/or protected by the work product doctrine. See attached Emails between Wenzloff and Jim Kelly.

24. Produce the fully executed Stipulated Order to Set Aside Default (dated on or about August 16, 2024) and all documents reflecting why it was not filed with the Saginaw County Circuit Court, including any internal discussions or directives concerning concealment or non-filing of the order.

ANSWER: Object to the extent that this Request asks for communications between the Credit Union and its legal counsel, which information is privileged and/or protected by the work product doctrine. Attached is a copy of the Stipulation which was sent to Defendant's counsel via email. Defendant's counsel, Jim Kelly, had the responsibility to file the stipulation and Plaintiff is not in possession of any information as to why Mr. Kelly did not do so.

25. Produce all documents reflecting Wildfire Credit Union's designation of Great Lakes Bay Staffing, Inc. account as a "strategic anchor account," including any internal memoranda, emails,

board presentations, risk assessments, executive directives, deposit-target reports, or ALCO/risk-committee materials that discuss continued servicing despite multiple NSF returns and overdraft conditions.

ANSWER: No meetings or conversations were held in which Great Lakes Bay Staffing was determined to be a "strategic anchor account". Copies of Board meeting agendas for June and July 2023 during Dr. Stockman's onboarding process are attached (with non-relevant, proprietary, and confidential information redacted) to show the absence of such decisions.

26. Produce all supervisory records, oversight reports, training materials, compliance audits, performance evaluations, and board-level reviews concerning the supervision of Employees responsible for account management, overdraft decisions, and risk-control functions related to any of the Accounts, including any evidence that Ben Denay, Ken Voelker, or any other Employee knew or should have known of incompetence or unfitness in the handling of NSF transactions and overdrafts.

ANSWER: Object for reason that information sought is unnecessary and intended solely to embarrass, harass, or vex the employees for whom the records are being sought. For training materials, see attached. See also Answer to Request #17 above.

27. Produce all documents reflecting compliance with the safety-and-soundness requirements of the Michigan Credit Union Act, MCL 490.342(2), including board level supervisory reviews, risk-committee minutes, internal findings regarding the continued extension of discretionary overdraft services to the Great Lakes Bay Staffing, Inc. account, and any loss-reserve calculations or insurance claims filed for the GLBS overdraft exposure.

ANSWER: Object for reason that the information sought is unnecessary, irrelevant, and overly burdensome. No insurance claims were filed relating to the Account, and the Credit Union's safety and soundness has not been impacted by the Account.

28. Produce all whistleblower complaints, ethics hotline reports, or internal audit flags concerning the handling of the GLBS account or similar high-risk corporate accounts.

ANSWER: No whistleblower complaints were filed regarding this matter or any similar high-risk corporate accounts.

29. Produce all documents reflecting promises or representations made by Wildfire Credit Union during solicitation and onboarding of the Great Lakes Bay Staffing, Inc. account concerning reliable, flexible, professionally managed overdraft and payroll services, "strategic anchor" status, or good-faith performance of the Business Services Agreement.

ANSWER: See Answer to Requests #2.

30. Produce all documents reflecting the benefit received by Wildfire Credit Union from Great Lakes Bay Staffing, Inc. account, including liquidity reports, deposit-growth metrics, payroll-float calculations, regulatory compliance reports, or internal memoranda showing improved deposit position or liquidity attributable to the account.

ANSWER: No such documentation exists. The Credit Union received no benefit from its relationship with Dr. Stockman, Great Lakes Bay Staffing, or the Account at issue.

31. Produce all litigation-hold notices, preservation directives, or spoilation-related records issued by Wildfire Credit Union or its counsel concerning the Great Lakes Bay Staffing, Inc. account, the state court action, or this adversary proceeding, together with any evidence of destruction, alteration, or non-preservation of internal communications, risk assessments, or Stipulated Order records.

ANSWER: Object to the extent that this Request seeks communications between Plaintiff and its counsel. Attached is the Credit Union's Record Retention Policy.

6/30/2026
Date

Tracy Kaufman
For Wildfire Credit Union

Date: 6/30/26

Karl L. Wenzloff (P71939), Attorney for Plaintiff
903 N. Jackson, Bay City, MI 48708
Tel (989) 893-9511 • Fax (989) 893-6988
wenzloffbankruptcy@sbcglobal.net

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION

IN RE:
MAGDALENA PEREZ,

      Debtor.

_____/

Case No. 24-21078-dob
Honorable Daniel S. Opperman
Chapter 7

WILDFIRE CREDIT UNION,
      Plaintiff,

Adv. Proc. No. 25-02007-dob

vs.

MAGDALENA PEREZ,
      Defendant.

_____/

MAGDALENA PEREZ
      Third-Party Plaintiff,

v.

JENNIFER STOCKMAN, and
DAVID LEWI EMMANUEL STOCKMAN,
      Third-Party Defendants

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on the date set out below I served a copy of the following document(s) upon each of the parties listed below.

     ***PLAINTIFF WILDFIRE CREDIT UNION'S ANSWERS TO THIRD PARTY DEFENDANT'S REQUESTS FOR PRODUCTION***
     ***CERTIFICATE OF SERVICE***

Served electronically via the Court's ECF system:

    Matthew Lee Frey:             mfrey@matthewfreylaw.com
    Scott Kwiatkowski:          scott@bk-lawyer.net

A copy was emailed to David Stockman at dstockma4@icloud.com.

Served in person on June 30, 2026 at the U.S. Bankruptcy Court, Eastern District of Michigan:

David Stockman
3871 Fortune Blvd.
Saginaw, MI 48603


Date:   6/30/2026 _____                     _____ /s/ Karl L. Wenzloff _____
                                                  Karl L. Wenzloff (P71939), Attorney for Plaintiff
                                                  903 N. Jackson, Bay City, MI 48708
                                                  (989) 893-9511
                                                  wenzloffbankruptcy@sbcglobal.net